UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| JANET PICHON HIXSON and RICHARD HIXSON, | ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) ) | CAUSE NO. 3:17-CV-166-PPS-MGG |
| v. | ) ) | |
| STEPHANIE GOTTSCHALK *et al.*, | ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This case arises out of a child custody determination made by the Superior Court of Wabash County, Indiana depriving Plaintiffs Janet Pichon Hixson and Richard Hixson of custody of Mrs. Hixson's two children. It's pretty obvious that the Hixsons are deeply disappointed with what took place in state court. Indeed, they previously sued the state trial judge but I dismissed that action. *See Hixson et al. v. McCallen*, Cause No. 3:17-cv-6-PPS-MGG (N.D. Ind. Apr. 13, 2017), DE 16. The Hixsons have returned to court, this time bringing an action against seven named defendants and ten John Does for the alleged violation of their federal and statutory rights. Each defendant was somehow involved in the state court custody matter. The Hixsons cast this suit as both a civil rights matter and a violation of state laws including abuse of process, negligence, malicious prosecution, perjury, conspiracy, official misconduct, defamation, and intentional infliction of emotional distress.

1

There is a fundamental problem with this case, and it's where all cases must begin: subject matter jurisdiction. The *Rooker-Feldman* doctrine deprives me of jurisdiction over this case because, quite simply, what the Hixsons are attempting to address with this litigation is the harm done to them by the state court judgment denying them custody of Mrs. Hixson's children. This is the precisely the type of action that *Rooker-Feldman* is meant to bring to a halt. This case must be dismissed for lack of jurisdiction. There is, however, one claim that may have legs but the Hixsons will need to amend their complaint to make that claim viable.

**Background**

For purposes of a motion to dismiss, I will take all facts as alleged in the complaint as true. Plaintiff Janet Hixson and Defendant Doyle Silvers were married from September 1999 to June 2007. [DE 1 at ¶ 14.] The couple had two children: Alvin "Lamoine," age 16, and Lyndzy, age 12. [*Id.*] The relationship between Mrs. Hixson and Mr. Silvers went sour and they became embroiled in a bitter divorce and child custody dispute. It's a sad story all around. Indeed, the state trial judge concurred with the Guardian Ad Litem that "Doyle and Janet present the most dysfunctional parenting the Court has ever seen." [DE 34-2 at 1.]

On August 7, 2009, Janet Hixson was awarded full custody of both children. [*Id.* at ¶ 16.] By the time this decision was rendered, Janet had moved to North Carolina and remarried in April 2009 to a man named Richard Hixson. [*Id.* at ¶ 15.] During the initial period of full custody, the children's father, Mr. Silvers, filed yearly child abuse

claims against Janet Hixson with both Mecklenburg County, North Carolina and Wabash County, Indiana. [*Id.* at ¶ 17.] Mecklenburg County Child Protective Services investigated each complaint and concluded that the Hixson home was a safe and healthy environment for the children. [*Id.*]

The allegations regarding what happened next are somewhat unclear. Evidently, during the Summer of 2013, the children were back in Indiana for a visit with their dad, Doyle Silvers. Silvers refused to return the kids to North Carolina and instead went to state court in Indiana requesting custody of the children because they were allegedly being abused by the Hixsons in North Carolina. [*Id.* at ¶ 20.] Whether this was an honest effort to save his children from harm or an effort to have the ensuing custody battle with his ex-wife on his home turf is unclear. In any event, what occurred in state court in Wabash County, Indiana is what this case is now about.

Before getting into the details of what the Hixsons claim, let's identify the defendants and what their respective roles were in the state court proceeding. The Hixsons have sued Silvers, Mrs. Hixson's ex-husband and the father of the two children at the center of the state court proceeding. They also have sued Roberta Fansler. She was the Court Appointed Special Advocate assigned to Janet Hixson's custody case. Three other defendants work for the Wabash County branch of the Indiana Department of Child Services. Margery Justice was the supervisor of the office at the relevant time and there were two case managers assigned to the case—Ryan Jacobs and Gina Cole. They all have been included as defendants in this action. Another defendant is Ed

3

Pereira, a social worker assigned to provide counseling to both of the children. The Hixsons also have their sites on Stephanie Gottschalk, the court appointed *guardian ad litem* ("GAL"). It was Ms. Gottschalk who recommended that the children's father be awarded temporary custody. [DE 1 at ¶ 27.] Finally, there is one other defendant whose role is ill-defined. His name is Evan Hammond and evidently, at some point in time while the nasty dispute between Mr. Silvers and Mrs. Hixson was ongoing, he came into possession of a tape recording of Mrs. Hixson having an argument with her current husband. The allegations are murky, but the gist of it is that the recording made its way to the state court judge in Wabash County who relied upon it in part to grant custody of the children to Mr. Silvers. [*Id.* at ¶¶ 76-80].

Matters came to a head at a September 2014 hearing in state court. According to the complaint in this case, it was at this hearing that Gottschalk, the GAL, recommended that Silvers be awarded temporary custody. [*Id.* at ¶ 27.] The Hixsons allege that Gottschalk admitted there was no actual evidence of child abuse or domestic violence in their home in Charlotte, North Carolina, but nevertheless believed that "something was going on." [*Id.*] Initially, Gottschalk recommended unsupervised visitation with the Hixsons but soon changed her story and claimed that the children were in imminent danger when around Richard Hixson. [*Id.* at ¶ 28.] The Hixsons allege that Gottschalk further abused her governmental power by offering to restore Janet Hixson's full custody if she left her husband. [*Id.* at ¶¶ 30, 33.] The Hixsons further allege that at Gottschalk's request, Judge Geoff of the Wabash Superior Court

4

issued a no-contact order between Richard and the children without the presence of Hixsons or a hearing in December 2014. [*Id.* at ¶ 35.]

For reasons unexplained in the Complaint, in April 2015, Judge McCallen, Special Judge of the Wabash Superior County assigned to this case, placed the children in foster care and issued a no-contact order between the children and both parents. [*Id.* at ¶ 42.] The period of no-contact lasted from April 10, 2015 to June 9, 2015. [*Id.*] The Hixsons allege that Silvers violated the order and secretly met with the children to coerce the children's testimony. [*Id.* at ¶¶ 43, 100.] The Hixsons now claim that the Defendants have relied on this coached testimony to support any recommendation to deny the Hixsons contact with the children. [*Id.* at ¶¶ 44, 92.] In fact, the Hixsons allege that their son, Lamoine, has stated that he does not fear his stepfather and wishes to have contact with him. [*Id.* at ¶¶ 34, 54.] Mrs. Hixson can see her children during supervised visits many of which allegedly have been cancelled or denied. [*Id.* at ¶¶ 30-32, 92.]

The Hixsons allege that Defendants Doyle Silvers and Stephanie Gottschalk "deliberately engaged in the children's alienation from Janet and Richard." [DE 1 at ¶ 47.] Gottschalk represented to the state court that the children preferred, and their well-being required, no contact with the Hixsons. [*Id.* at ¶ 88.] The Hixsons allege that Gottschalk's recommendations to Judge McCallen are unsupported and have caused "irreparable harm not only to Janet but to her children as well." [*Id.* at ¶¶ 88-89.] They allege that Gottschalk makes accusations of child abuse without evidence other than her

5

"feeling [that] something is not right." [*Id.* at ¶ 94.]

The Hixsons further allege that Defendants Gina Cole, Case Manager of the Indiana Department of Child Services, and Margery Justice, Supervisor of the Indiana Department of Child Services, withheld evidence from the court and created "false and misleading reports" to prevent Mrs. Hixson from regaining custody or restoring visitation rights with her children. [*Id.* at ¶ 66.] Specifically, the Hixsons allege that Gina Cole withheld the results of Silvers' psychological evaluation that indicated he was at risk of child abuse and neglect. [*Id.* at ¶¶ 58, 63.] The Hixsons also allege that Cole neglected to provide to the state court judge the Department of Child Services ("DCS") intake interviews of the children expressing concern for their father's stability and describing instances of abuse. [*Id.* at ¶ 52.] The Hixsons also allege that Cole refused to cooperate with service providers in Charlotte, thus preventing Janet from completing her court ordered assessments. [*Id.* at ¶ 101.] Cole then turned around and used Janet Hixson's noncompliance to recommend permanent placement with Silvers. [*Id.* at ¶¶ 109-10.] Even though reunification was the court's goal, the Defendants continue to insist that living in the Hixsons' home would not be in the best interest of the children. [*Id.* at ¶ 61.]

There's more: the Hixsons allege that Roberta Fansler, the Court Appointed Special Advocate assigned to Janet Hixson's custody case, failed to contact and listen to concerns of several friends, relatives, and teachers with whom Mrs. Hixon wanted her to speak [DE 1 at ¶¶ 124-127.] The Hixsons claim that Fansler erroneously listened to

the direction of Gottschalk, who instructed her not to follow up. [*Id.*]

Finally, as referenced above, the Hixsons allege that Defendants Evan Hammond and/or Doyle Silvers provided an illegal tape recording of a private argument to Defendants Gottschalk, Cole, and Pereira. [*Id.* at ¶ 78.] How they got such a recording is entirely unclear. The Hixsons say that a subsequent lawsuit followed and allegedly was settled, the details of which the Hixsons tell me cannot be discussed. [*Id.* at ¶ 76.] According to the Hixsons, Defendant Gottschalk impermissibly gave a copy of this tape to Judge McCallen. [*Id.* at ¶ 79.] They allege both civil and criminal liabilities arising from the possession and distribution of this recording. [*Id.* at ¶ 78.]

The Hixsons bring this suit under 42 U.S.C. §§ 1983, 1985 and under state law. They request compensatory and punitive damages in the amount of $10 million, appropriate equitable damages, and treble damages for the damages related to the creation and distribution of the tape recording. [*Id.* at 32.] Defendants Roberta Fansler and Ed Pereira now move to dismiss all claims against them in separate motions to dismiss. [DE 28, 33.]

This Opinion has been a long time coming. This is because at the time this action was filed, and at the time the motions to dismiss were filed, Janet Hixson's appeal of the underlying custody determination was pending before the Court of Appeals of Indiana. *See Janet Hixson v. Doyle Silvers*, Cause No. 85A05-1701-DR-00138 (Ind. Ct. App.). I decided to hold off on deciding the motions until the Court of Appeals issued its opinion on the custody determination of the Wabash Superior Court. On August 30,

2017, the Court of Appeals affirmed the custody determination of the Wabash County Superior Court awarding custody to the father, Mr. Silvers. *See* Memorandum Decision, *Janet Hixson v. Doyle Silvers*, Cause No. 85A05-1701-DR-00138 (Ind. Ct. App. Aug. 30, 2017).

In its ten page decision, the Court found that there was ample evidence to support the decision of the trial court judge. The court mentioned the allegations of abuse by the stepfather; the fact that Silvers attended counseling regularly but Mrs. Hixson only sporadically; and importantly, that the children appeared to be doing quite well with their father. They were both on the honor roll and involved in extracurricular activities. *Id.* at 9. The Court further quoted from the trial court ruling where the judge was obviously concerned about Janet Hixson's decision to ask her son to testify at the custody hearing. According to the trial court, the son was "clearly conflicted" by being put in that position and this decision by Mrs. Hixson "showed a callous disregard for his well-being." *Id.* at 8 (quoting the trial court).

**Discussion**

I don't need to address the substance of the pending motions to dismiss because, for the reasons I discuss below, I do not have jurisdiction to do so. Because Plaintiffs are *pro se*, I must construe their complaint liberally and hold it to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the Hixsons remain responsible for proving that the jurisdictional requirements have been met. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d

8

586, 588 (7th Cir. 2014). And, of course, I have the obligation to monitor my own jurisdiction. If it is determined that this Court lacks jurisdiction, I must dismiss the case under Federal Rule of Civil Procedure 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1); *Baker v. Kingsley*, 387 F.3d 649, 656 (7th Cir. 2004).

This action is *undeniably* intertwined with the underlying state court child custody action. All of the allegations and claims contained in the Plaintiffs' complaint arise from the alleged conduct of various actors involved in that action, which resulted in the loss of custody of Mrs. Hixson's children, a determination that Mrs. Hixson appealed and was affirmed by the Court of Appeals of Indiana. *See Janet Hixson v. Doyle Silvers*, Cause No. 85A05-1701-DR-00138 (Ind. Ct. App.). And this is not the first attempt by the Hixsons to challenge determinations made in the underlying state court action by bringing a case before me. As noted above, I previously dismissed an earlier action brought by the Hixsons against the judge presiding over the state court matter, Judge Robert J. McCallen, alleging that his decision ordering the children to be placed in a foster home and subsequent decision ordering supervised visitation between Mrs. Hixson and her children was not supported by definite and articulable evidence. Opinion and Order Granting Motion to Dismiss, *Hixson et al. v. McCallen*, Cause No. 3:17-cv-6-PPS-MGG (N.D. Ind. Apr. 13, 2017), ECF No. 16. I dismissed that action finding that I lacked jurisdiction in part because of the *Rooker-Feldman* doctrine.

Let's begin by laying out the contours of the *Rooker-Feldman* doctrine. It derives its name from *Rooker v. Fidelity Trust Co.*, 236 U.S. 413 (1923) and *Dist. of Columbia Ct. of*

9

*Appeals v. Feldman*, 460 U.S. 462 (1983). At its basic level, the doctrine bars lower federal courts from having subject-matter jurisdiction over claims that seek review of state court judgments. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Lance v. Dennis*, 546 U.S. 459, 463 (2006). The *Rooker-Feldman* doctrine "prevents lower federal courts from exercising jurisdiction over cases brought by 'state court losers' challenging 'state court judgments rendered before the district court proceedings commenced.'" *Lance*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)).

The *Rooker-Feldman* doctrine applies in two circumstances. The first involves a situation like in *Lance* where a plaintiff loses in state court and then asks a federal court to overturn that decision. The second application is where the federal claims are "inextricably intertwined" with the state court judgment. In this latter situation, the question is essentially whether the state court loser is requesting a federal court to review the state court judgment. *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012); *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002). This determination "hinges on whether [the claim] alleges that the supposed injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Brown*, 668 F.3d at 442; *see also Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir. 1996) ("[T]he issue is whether the federal plaintiff is injured by the state court judgment or by a prior injury at the hands of the defendant.").

10

The *Rooker-Feldman* doctrine is not concerned with why the state court's decision might be wrong, but with which federal court has the authority to intervene. *Iqbal v. Patel*, 780 F.3d 728, 729 (7th Cir. 2015). Indeed, it might be that the state judgment is plainly wrong or flat out unconstitutional, but even in those situations, I would not be able to review the plaintiffs' claims. *See Holt v. Lake County Bd. Of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005) (holding that plaintiff could not avoid *Rooker-Feldman* by styling the injury arising from the state court judgment as a due process violation). The only route to federal court in this circumstance is through the state appellate process and then a writ of certiorari to the U.S. Supreme Court. *Iqbal*, 780 F.3d at 729 ("[T]he Supreme Court of the United States is the sole federal tribunal authorized to review the judgments of state courts in civil litigation.").

This case involves the second type of circumstance in which *Rooker-Feldman* acts as a bar to federal jurisdiction. While the Hixsons are not explicitly asking me to overturn the state court's underlying custody determination, they are asking me to find that the *process* by which that determination was made violated their statutory and constitutional rights and, as a result, award them damages for the injuries they suffered due to that process and resultant determination. In other words, at bottom, the alleged harm suffered by the Hixsons, for which they seek compensation, is the loss of custody of Mrs. Hixson's children. And while that harm is undeniably significant, it is one that must be addressed by the state court, not by a federal district court. The Hixsons' claims of impropriety during the domestic relations investigation process, including the

actions of various member of the Indiana Department of Child Services, would require me to review the judicial process followed by the Wabash Superior Court in determining the custody of Mrs. Hixson's children, making them "inextricably intertwined" with a state court judgment, falling squarely under *Rooker-Feldman*'s jurisdictional bar. *See Brown*, 668 F.3d at 442 ("[A]ppellant's artful pleading cannot get him around *Rooker-Feldman* when the gravamen if his complaint requires the district court to review the state judicial proceeding.").

The Hixsons try to get around *Rooker-Feldman* by arguing that their claim is independent of the state court judgment. [DE 26 at 2.] They rely, in part, on *Brokaw v. Weaver*, 305 F.3d 660 (7th Cir. 2002), which held that *Rooker-Feldman* did not bar the plaintiff's suit because the plaintiff did not have a reasonable opportunity to raise her claims in state court. The facts in *Brokaw* are nothing like what we're dealing with here. In *Brokaw*, the plaintiff was the actual child removed from the custody of her parents. That plaintiff brought suit against her grandfather, aunt, and uncle fifteen years after the custody determination was rendered alleging that they conspired to violate her constitutional rights by reporting false claims of child neglect. *Brokaw*, 305 F.3d at 661. In that case, the Seventh Circuit conducted a detailed analysis of its precedent regarding the *Rooker-Feldman* doctrine's application to other similar actions, many of which were child custody disputes, involving claims based on actions related to underlying state court determinations. The Seventh Circuit explained that the appropriate question is "whether the federal plaintiff is seeking to set aside a state court judgment, or does he

present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.* at 666 (quotation marks omitted). Relying on *Long v. Shorebank Development Corp.*, 182 F.3d 548 (7th Cir. 1999), the *Brokaw* Court drew a distinction between a violation that allegedly occurred prior to, and completely independent of, the state court proceedings, and a violation that allegedly occurred as part of the state court proceedings, like a due process challenge. *Id.* at 667. The former action is not barred by the *Rooker-Feldman* doctrine, while the latter is. *Id.*

Here, the Hixsons' federal action is based on alleged violations that occurred as *part of* the state court proceedings; specifically that members of the Wabash County Department of Child Services did not properly investigate and report on the status of the children, ultimately depriving Mrs. Hixson of her "right as a parent to the care, custody, companionship, and management of her children" and Plaintiffs' "right to engage in a marital relationship without interference from the state." [DE 1 at ¶¶ 131-132.] As I read the complaint, the Hixsons claim that the state court judgment was a product of conspiracy and/or the violation of constitutional or statutory rights, specifically the right to due process. These claims, therefore, cannot be considered separate from the state court order because absent the custody order, the Hixsons would not have suffered the injuries for which they now seek compensation. *See Brokaw*, 305 F.3d at 667. In other words, the only injuries that are alleged were derived from the state court judgment itself making the claims inextricably intertwined with the

state court judgment. *Brown*, 668 F.3d at 444 ("[T]he casting of a complaint in the form of a civil rights action, however artful, cannot circumvent *Rooker–Feldman*.").

Finally, unlike the plaintiff in *Brokaw*, who, as the child in the underlying custody action, did not have an opportunity to raise her claims in state court, the Plaintiffs' in this action had the opportunity to raise their claims during the custody action as well as their appeal of the custody determination. It does not matter if they did or did not do so, only that they had the opportunity. The Hixsons have neither alleged nor pointed to any action that prevented them from presenting their claims to the state court. *Long*, 182 F.3d at 558 (In cases where *Rooker-Feldman* is held not to apply, "the federal litigants have pointed to some factor independent of the actions of the opposing party that precluded the litigants from raising their federal claims during the state court proceedings. Typically, either some action taken by the state court or state court procedures in place have formed the barriers that the litigants are incapable of overcoming in order to present certain claims to the state court.") For all of these reasons, pursuant to the *Rooker-Feldman* doctrine, I lack jurisdiction over this action and this action must be dismissed.

There is one area of the complaint that may be unaffected by *Rooker-Feldman*. While I do not have jurisdiction over any of Plaintiffs' claims as they currently are pleaded, it is possible that they may have a claim regarding the tape recording that is independent of the underlying state court procedures. [*See* DE 1 at ¶¶ 76-80.] To be clear, as pleaded, the alleged wrongdoing by Silvers and Hammond for providing a

14

copy of the recording to Gottschalk, and Gottschalk's actions in giving it to Judge McCallen, all falls squarely within the confines of the process surrounding the underlying state action and is, therefore, inextricably intertwined with it. As such, I do not have jurisdiction over those claims as pleaded pursuant to *Rooker-Feldman*. But the *creation* of the tape recording is a horse of different color.

There are no allegations in the Complaint as presently drafted over who is responsible for making the recording. The Hixsons allege that there was a prior lawsuit regarding the recording that was eventually settled, but give me no additional information. Perhaps the issue surrounding the making of the recording already has been litigated or could have been litigated as part of that earlier action and the Hixsons are precluded from raising it in a subsequent action. On the other hand, it may be that the Hixsons have an independent claim of violations of their statutory and/or constitutional rights involving the creation of the tape recording. I simply can't tell one way or the other. As such, and especially given their *pro se* status, I will grant the Hixsons leave to file an amended complaint limited to the issue of, and only against those defendants responsible for, the creation of the allegedly unlawful recording.

One final note: I caution the Hixsons to consider whether issue preclusion or collateral estoppel prevent such a filing given that there already has been some type of litigation regarding the tape recording, as well as proper venue, given that the recording appears to have been made in North Carolina, before deciding to file an amended complaint.

## Conclusion

For the aforementioned reasons, this action is **DISMISSED** for lack of federal subject matter jurisdiction. All pending motions are **DENIED AS MOOT**. The Plaintiffs are **GRANTED LEAVE TO FILE AN AMENDED COMPLAINT** regarding the creation of the tape recording. Should the Plaintiffs choose to file an amended complaint, they must do so no later than **November 27, 2017.**

**SO ORDERED.**

ENTERED: October 26, 2017.

 s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**